We'll hear argument first this morning in Case 18-776, Guerrero-Lasprilla v. Ovallas. And Attorney General Barr. Mr. Chief Justice, and may it please the Court, Section 2D provides for review of questions of law decided by the Board of Immigration Appeals. I'll start with where we and the government agree. At minimum, courts may review whether the Board identified the proper legal standard. The government agrees. For this review to be meaningful, and not just a requirement of correct boilerplate, courts must determine whether the government used the proper standard. Again, the government agrees. Review extends to whether, quote, the Board actually used the wrong standard. Despite acknowledging this, the government fails to distinguish how reviewing whether the Board actually used the correct standard is different than reviewing whether the Board correctly applied that standard. In our view, these inquiries are effectively the same. They use the same tool, applying the correct legal standard to the facts. To the extent there is a difference, the government does not provide a test for telling them apart. Jurisdictional rules need to be clear. But the government does not explain how courts decide whether the Board actually used the correct standard. Our rule is clear. There is no judicial review over historical facts, but there is review over their legal significance. The court should adopt this construction for three reasons. First, it accords with the essential premise of judicial review, which the statutory text has unmistakably established. Second, it is necessary for Congress to have fully responded to St. Cyr. And third, it is a clear rule, which is crucial to establish the boundaries of jurisdiction. Turning to what Congress needed to do in order to fully respond to St. Cyr, there are at least four separate points that illustrate Congress had to create jurisdiction for the application of law to fact. Alito, before you get to that, I wonder if you have not read too much into the government's statement that a — that under their theory it would be permissible for a court to review not just whether the — the Board articulated the right theory, but whether it actually used the right theory. When I read that, I thought what they were saying was that review would extend to those perhaps rare situations where, although it was in response to your argument that if the — if the right standard was merely mentioned, that would be sufficient. And I thought they were just saying that if it was clear that even though the right standard was mentioned, you could see that that was not at all what was being done, that there would be review there. So I thought that was a very narrow exception. So the difference between what I understood them to be arguing and your position was considerably larger than what you suggested to start out. Well, as Your Honor suggests, I think the government does agree that if the — the decision of the Board on the face invokes the correct standard, but a reasonable reader of that decision would appreciate that that standard was not used to actually decide the case, that there would be judicial review over that. Once the government agrees with that, which I think they must, otherwise it's judicial review in substance — or not in substance at all, only in form. Once the government agrees with that, they haven't actually articulated how that test differs from applying a lot of fact. And our point is that — Well, I think it's like a sham. It's a sham exception. So if that's really not what's going on, that they're not really applying the right theory, the theory that they claim to apply, there would be review in that situation. That's how I read it. Now, Mr. Lew can correct that. I think a few things about that. First, I think it's very difficult to distinguish what it makes for a sham articulation of the standard versus not actually looking to determine whether it was properly applied. How do we determine if it was a sham? You consider what the right standard is. You consider the facts. And if the facts turn out to be a textbook application of that standard, but the board reached the opposite conclusion, you would find that it was a sham. But there's a big difference between your two positions, and it has to do with the application of the legal standard to the facts where the legal standard requires a considerable exercise of judgment, as it does with equitable tolling, where you have to determine whether there's due diligence or exceptional circumstances. You would say all of that can be reviewed. Well, Your Honor, yes, but I think to the extent there's a difference, if there is a difference, it's a difference in degree. But the government doesn't provide a way to distinguish between when the degree is sufficiently enough to say that the standard wasn't actually used. But the other problem with this is if that is the test that the government advances, it has the effect of merging the underlying merits of the inquiry with the jurisdictional analysis. The end result would be there would be jurisdiction if the decision of the board was really, really wrong, but not if it was a little bit wrong. And so that result would be that you'd have to do the merits inquiry to figure out even if you have jurisdiction over the case. Well, suppose we take their principal argument, which is that this applies, the only thing that can be reviewed is a pure question of law. All right. That's a clear rule. Is it not? Yes. And I don't think they actually stick with that, but that would be a clear rule. Yes, Your Honor. Okay. And under your interpretation, what is the difference between the degree of review that is permitted in the case of a criminal alien and the degree of review that's permitted in the case of a non-criminal alien? It's very, very slight, right? I don't think so, Your Honor. There's a very substantial difference, and that's that there's no review over all of the factual determinations that are made. And there are very substantial factual determinations that are often dispositive of removal cases that are made throughout these proceedings. And those would not be subject to judicial review. But those are all made under a substantial evidence standard. It's a highly deferential standard. So I take your point that there might be a few cases that would come out differently, but it would be rare, wouldn't it? I don't think it would necessarily be rare, Your Honor. I think there are many cases where courts of appeals under substantial evidence review still reverse the factual findings. But what we have here is we have a statute, 2D, that was written far after 2C. And the reason that 2D was written on top of 2C was as a response to what this court held in St. Cyr. So I think to understand what Congress was trying to accomplish in 2D, it's important to understand what Congress needed to do in order to respond to what this court held in St. Cyr.  Kagan. I'm sorry. You keep on wanting to talk about St. Cyr and we keep wanting to talk about other things. But before you get to that, throughout your brief there is this idea that really mixed questions of law are pure questions of law. I mean, if we have to put them in one bucket or another, they should go in the legal bucket, because they're all matters of interpretation, you say, they're all essentially law-like. But, you know, I started looking around to think about some of the other questions that your view might suggest as a law question. And so here are just a few that I came up with. Whether a non-citizen's removal would result in exceptional and extremely unusual hardship, whether a non-citizen has been subjected to extreme cruelty, whether changed country conditions are present. I could go on, but all of these, you know, if you just sort of look at them and say, what is it mostly going to involve? It seems as though most of those questions are going to mostly involve fact-finding. So, you know, a few responses to that. First, some of the examples that you gave are ultimately issues that are discretionary. And when we have a discretionary question, of course, there's a different framework under 2B, which would be review over the eligibility for the discretionary determination. But, for example, whether or not there's a changed country condition is likely a discretionary determination by the board. But to get to Your Honor's principal question about how we disentangle the facts in the law here, and I think the question goes to whether or not the Lakeridge style analysis, where we characterize mixed questions as more principally legal or more principally factual, should be used in this context. And I think that, of course, the Court has established that sort of framework for use in other parts of the law. Well, I wasn't even talking about using the Lakeridge framework here. I was just sort of talking about the assumption that your briefs make, that if you were to put these in one bucket, just one bucket, it should be the legal bucket, that these are really law questions. And I guess I'm saying that when I look at the range of these questions, quite a lot of them seem to me to be really fact questions. You know, cases where it's not only the finding of facts, but it's the weighing of facts, the making credibility judgments, the way in, you know, the balancing of different facts against each other, that sort of thing. Well, so, Your Honor, I agree insofar as what the Board is doing is finding historic facts or finding credibility or adding historic facts to make other judgments about historic facts or predictions about future facts. Those sorts of factual determinations are things that would not be jurisdiction under 2D. What our point is, is once those historic facts have been found and then a legal standard is applied to those facts, that aspect of the mixed question is legal. So, and let me try to clarify our briefs. We think in every mixed question, by its definition, there is a legal element and there is a factual element. And so sometimes it's true the factual element will be far greater than the legal element, but our point is that 1252 creates a structure where there is judicial review insofar as there is the legal element of the mixed question, and that unlike what happens in other contexts where those two are put together and there is a single standard of view provided, the structure that 1252 creates is the courts disaggregate the legal findings from the factual findings and they have to set those aside. So all of the examples Your Honor provided about the factual findings we agree are not reviewable, but to the extent there is the application of a legal standard or considering the legal significance of those historic facts, that is where the board is doing legal work and there is judicial review over that as a question of law in section 2D. Sotomayor, I was thinking about this in similar terms to Justice Kagan, but what I realized gave me some clarity was a statement that my colleague made in a case involving the exceptional circumstances of diligence and where he said it's a question of law, because let's take the cruelty issue. Whether a punch is cruel, or a knife wound is, or a threat to family is, all of those are facts that can be found by the BIA or a finder of fact, but whether it constitutes or rises to the level of the legal standard is a question of law, correct? I think that's right, Your Honor. And one example in this case is the issue of whether or not the Fifth Circuit's decision in Lugar-Rosendaz qualifies as an extraordinary circumstance. Either that change in the law qualifies as an extraordinary circumstance, which has substantial effects for equitable tolling, or it doesn't. But whatever the answer to that question is, that's the sort of legal issue that should be decided the same. Well, but I mean, you know, is a punch cruel? I mean, obviously in the abstract it could be anything to the — however soft it is to the extent it's an offense to dignity or, you know — I mean, isn't — wouldn't one thing to do, if you're trying to figure that out, to be — look at the range of legal decisions, determinations that said this conduct is cruel, this conduct is not, this conduct is cruel? And I don't know that that makes it any easier to characterize. Well, I think, Your Honor, the Court has found that it is relatively easy, although they're always line-drawing, but the courts are well-equipped to be able to distinguish between where historic fact ends and legal conclusions begin. That's something that courts have to do every day of the week when they resolve 12b-6 motions, for example, where Iqbal and Twombly instruct the courts, you set aside legal conclusions that are within a complaint. So I agree, though we do know that Congress meant to restrict the court of appeals review of orders of removal of criminal aliens. So that was Congress's purpose. It wanted to limit it — limited review in the case of removal of criminal aliens. And if you — your position is only fact disputes are reviewable, no law — application of law to undisputed facts, only straight-out fact disputes. And how often do straight-out fact disputes come to court of appeals? Because usually facts are decided in the first instance. Well, Your Honor, I can say that factual disputes are very often entirely dispositive of removal proceedings. It's true that those cases may be less often appealed because of the substantial — or the standard of review that courts of appeals apply, but I can just provide a few examples of factual issues that are often dispositive. For example, an individual might claim that they were born in the United States, so in fact a U.S. citizen. They might claim that examples of past persecution occurred, so they're entitled to asylum, but the board might disagree. That can include if they had forced sterilization or forced abortions. The board will have to decide whether or not those things occurred. Did the individual testify credibly? That will often be dispositive of the removal proceeding. And I can go on with a list of different issues. For example, was the individual convicted of the particular crime or was it somebody else with the same name? Those are factual disputes that the boards are resolving, or the immigration judges in the first instance, and then the boards are resolving on a daily basis. Alitoso, along similar lines, the question we have here is reasonable diligence. That's the big question. And when that's reviewed under 1252, where it can be reviewed, my understanding  is that that's the right standard of review. And that would typically be the case in a lot of questions where diligence is the issue. The courts of appeals review that for abuse of discretion. If that's right, and just suppose for a moment that's right, all right, let's not argue about that, let's suppose that's the right standard of review, what does that teach us about the question before us? As Your Honor suggests, our principal argument is to resist the premise. We do think that the weight of the laws in this Court's precedent is treating diligence not as a question of law that is reviewed de novo. But if the Court, accepting the premise and the Court disagrees with us, which I don't think it should, but if the Court does disagree with us, what this Court still holds is to the extent that there is deference or discretion that lies with the board, still the proper way to approach section 2D in these contexts is to determine whether or not the individual has shown their legal eligibility, that 2D is the right 2D provides review over that eligibility for the ultimate exercise of discretion. So even if reasonable diligence is discretionary, and we don't think it is, but there would still be the question of if they've shown the threshold step of being eligible. And Your Honor's decision in Iliyev in the Tenth Circuit, I think, clearly established how even when there is an underlying discretionary determination, there's – I think I did everything I could to avoid this question in that case. And I think you know that. But I guess I'm just trying to disentangle what would be available for us to review legally versus what would then be left to the board, the discretionary decision, if in fact we review the case for abuse of discretion in our legal review. Well, Your Honor, where I think abuse of discretion comes in is not at the question of diligence. It comes in with whether or not the board chooses to reopen the case. The board – that is a decision that we agree the board has discretion as to whether or not to reopen the case. I think diligence, as this Court has said in Bank of Columbia, and I can cite five more cases, that is a pure question of law. But when the board decides a case in a different way and says we're deciding this as a matter of discretion, we're issuing what the board calls a discretionary denial, that is the sort of issue that is not subject to judicial review. And when the board does a discretionary denial, that is very clear on the face of it And let me just provide an example. We just went and found a recent BIA decision from November 1, 2019. This is a matter of CASD, and the board said, quote, we conclude that the respondent does not merit a favorable exercise of discretion because, quote, the equities in his case are insufficient to outweigh his history of very serious and violent criminal conduct. When the board is exercising its discretion to make a discretionary denial, it says so expressly on the face of the opinion. We agree that none of that exercise of discretion, when appropriate, is reviewable, and that could be the case with the motion to reopen where the board does have discretion. But the board did not exercise that discretion in this case. It found that he was ineligible for Mr. Hughes, I mean, I think the question that Justice Gorsuch asked is a very broad one. And it's with respect not just to the diligence, but to all these other questions that you think should end up being reviewable, like the ones that I mentioned. Which sound awfully factual, you know, extreme cruelty, whether there's unusual hardship, whether there's changed country conditions, all of those are reviewed generally with a highly deferential standard. And that suggests that everybody's aware that most of the work is being done at the factual level, and the application of the legal standard at the end is not where the action is. And given what Justice Ginsburg was saying about Congress's intent here, which was pretty clearly to withdraw review power from large categories of cases, except the ones that were principally legal in quality, you know, why doesn't that suggest that you're putting too much in this reviewable basket? Well, Your Honor, to the extent those questions, as you say, are driven principally by the facts and the legal work is only doing a little tail at the end, then that would be true on appeal as well. The legal work would not be doing a whole lot, and the decisions might be established by the facts that would be found by the Board and would not be reviewable. But let me provide an example where I think it is heavily factual, but I think we would say that the review would be a question of law. Assume for a moment in an asylum case there's a question of past persecution, which is very important in asylum cases. Persecution is generally defined as a threat to one's life or freedom, and past persecution creates a presumption of future persecution. The Board takes a case, they properly state that standard, then they find these facts. An individual was imprisoned in a particular country for a decade because of their membership in a political party. That is a classic case of persecution. But then the Board concludes this individual was not subject to past persecution. Well, what do you do with that case? The Board said that they properly – they identified the proper standard, they found the facts, and usually the facts are going to be dispositive, but there at the end of the day, where that – the law issue came in was only a very small part of the case, but turned out to be dispositive. I think the government even agrees that in circumstances like that, for judicial review to actually be substantive judicial review, there would have to be review in that case. And we think that is critical for the Court to recognize that in cases like that, there is judicial review. On the statutory history point that Justice Kagan raised, St. Cyr involves what the Congress we know then comes in, and there are a variety of statutes, as you are aware, that refer to mixed questions, but Congress in this statute does not refer specifically to mixed questions. So if you put those two things together, you would lean toward reading this statute to refer to what one might call pure questions of law. That is the government's argument.  A few reasons, Your Honor. First, I think this is the government's three-part topology that Congress speaks of mixed questions, and I think that is disproven by a section of the Real ID Act that is just a couple sections after where 2D was created, and that amended B9, the zipper clause, in a way to deal with all of the issues that arise in immigration, and there it speaks of law or fact. So we know that Congress often speaks of law or fact to be inclusive of the whole universe. But the second point is, in order to respond to St. Cyr, what Congress knew or was existing habeas jurisdiction that was occurring in the district courts, keep that scope of jurisdiction the same and move that jurisdiction into the courts of appeals for petitions for review under section 1252. The evidence there is unanimous that four courts of appeals following St. Cyr had looked at that decision and addressed the scope of jurisdiction. All four courts had found that there was decidedly jurisdiction to resolve the application of law to fact. If Congress had not had 2D sweep to include applications of law to fact, that habeas jurisdiction that had been recognized in four separate circuits would have been retained. And then a final point on the history there, Your Honor, is that earlier drafts had included the term pure questions of law. That drew a specific objection from commentators during the markup process. And after that objection to the word pure was lodged, Congress then struck that limitation, and this Court ---- But that was in the conference report, Your Honor, and if this Court is going to look to the conference report, where I think this is an area to be skeptical because what Congress actually did is far more probative, but if the Court looks to the conference report, I think you look a couple sentences later where the Court or the conference report says what happens with mixed questions, you review to the extent there are legal elements, we think that sweeps in our rule. But again, I think when the language actually appeared, there was an objection and it was withdrawn. That's a little bit more probative than what the conference report says. Sotomayor, can you succinctly tell me what the questions of law are in your two cases? Yes, Your Honor. First, with Mr. Guerra-Lasparia, the question is does Lugo-Rosendez qualify as an extraordinary circumstance that would then have the effect of affecting his period of reasonable diligence. For Mr. ---- I phrased it differently in my own head. Whether the existence of adverse circuit precedent serves as an obstacle to filing a timely motion to reopen. That's – I think that's just a broader way of saying the same question, Yes, Your Honor. I think that is a – that is yes. And Mr. Rivelas? There, I think one – there are a few questions. The principal one is, is an asserted period of delay alone a basis in order to find that an individual was not reasonably diligent? Is that creation of a per se rule? The Sixth Circuit in the Gordillo case, pointing to earlier Seventh Circuit precedent in the Pervais case, said expressly that looking just to the passage of time without considering other factors that suggest a person's diligence in the circumstances is not an appropriate way to undertake the diligence inquiry. So I think that that case is focused on whether or not the board's application of an 8-month per se rule violated the underlying principles of reasonable diligence. Mr. Hughes, you haven't spoken much about the presumption of reviewability. I just have a question about the nature of that presumption, and I guess I would like Mr. Liu to answer the same question. Do you think that that presumption is a presumption about congressional intent, or do you think that that presumption is a presumption that's meant to reflect other values? I think it's – it's both, Your Honor. I think it's a presumption of congressional intent, but I think it's also a presumption that's meant to reflect the appropriate balance between judicial power and the administrative power, because, of course, here, if the Court finds that questions are – are factual, lean factual, and therefore assign legal work to the administrative agency, the effect that that has is ceding authority from the Article III courts to the administrative courts, to have more authority to be able to decide whatever tail of legal aspect there is there. So I think the presumption of reviewability goes to not just a congressional presumption, but also a separation of powers principle. Thank you, counsel. Mr. Liu. Thank you, Mr. Chief Justice, and may I please the Court. When Congress used the words questions of law in Section 1252a2d, it meant questions of law only, not questions of fact and not mixed questions of law and fact. We know that from the text of the provision itself, which doesn't mention questions of fact or mixed questions, but we also know it from the context in which Congress enacted the provision. In St. Cyr, this Court held that denying criminal aliens a judicial forum for pure questions of law would raise constitutional doubts. When Congress enacted this provision following St. Cyr, it wanted to provide criminal aliens enough judicial review to avoid those doubts, but no more. Questions of law thus refers to the same questions identified in this Court's decision in St. Cyr, pure questions of law. Now, petitioners would read questions of law to extend far beyond purely legal questions to encompass every mixed question of law and fact, but mixed questions aren't mentioned in the text of Section 1252a2d. They're not mentioned anywhere in St. Cyr either, and construing questions of law to encompass every mixed question would all but undo Congress's efforts to limit the scope of judicial review in cases involving criminal aliens. Remember, it's been Congress's goal since 1996 to streamline and expedite the removal of criminal aliens, and yet under petitioners' reading, criminal and non-criminal aliens alike would get judicial review of all constitutional claims, of all questions of law, and of all mixed questions. The only difference in the judicial review that they would get would be limited to the That difference would be this, whereas in cases involving criminal aliens, the Board's factual findings would be conclusive, whereas in cases involving non-criminal aliens, the Board's factual findings would be conclusive unless not supported by substantial evidence. Now, that's a pretty subtle difference, given that courts don't often overturn factual findings for lack of substantial evidence, and if that's the narrow difference that The original version of the statute had pure questions of law, and to pick up on your point on the statutory history, then that's deleted, and Deputy Assistant Attorney General Cohn testifies and says a mixed question of law is, in effect, a question with two parts, the legal part and the factual part. The legal part, of course, is reviewable. That's what the Justice Department said in response to the ACLU's objection to the draft. Was that correct? We do think the legal part is reviewable, but I think it's important to understand what we think that legal part to be. That legal part is the same part this Court identified in Lakeridge. It is the legal test or standard that the Board used in deciding the case. I think Congress was pretty justified in thinking the word pure was superfluous. I mean, just as a matter of ordinary English, you know, a question is a mixed question because it involves both law and fact. If you leave off the words and fact and refer only to a question of law, then it's an unmixed question. Mr. Liu, I'd like to poke at that just a little bit and return to Justice Alito's question at the beginning of the argument. Sure. Is it the government's position that only pure questions of law are reviewable, or is it also the government's position that there can be some applications that are so egregious that they would rise to the level of being questions of law? It's the former position. So our view is that only pure questions. Okay. If that's the case, is there any judicial review here meaningfully at all? Because all the BIA has to do is recite the legal standard and we become a rubber stamp and say, yes, they have recited the correct legal standard. And no matter how unreasonable, no matter how crazy the application is, we have to provide a judicial imprimatur to that decision. Does that cause any concerns for you, for the government? And what about the clear statement rule and the idea of the presumption of reviewability here and the separation of powers concerns that Justice Kagan pointed out that undergird it? I guess I'd just make maybe three points. First is, it's not the case that every case is going to involve an already settled legal principle. There are actually issues of first impression out there, and when the board decides those legal questions, those are reviewable in the courts of appeals. Now, there are going to be cases where the legal standard has been settled, like it is in the case of reasonable diligence. It's very easy for the board to know what the applicable standard is. In those cases, when the board does state the applicable legal standard, that is, except in the very rare instance that I think Justice Alito alluded to, that's going to be the end of the match. Now you're backtracking, I think, a little bit. Is it just if they recite the legal standard, the pure question of law correctly were done, or is there some further review by the court available for completely crazy applications? I think I've heard you go both ways on that, and I'm just trying to get you on that. Maybe I can illustrate this with an example. No, no, just before we get into examples, if you could just firmly answer the question. In our view, the court can never review an application of law to Federal. Never review that. What it can do is make sure the board used the correct legal standard. So if the board says the standard for equitable tolling is reasonable diligence, but then it goes on to cite cases from a bygone era where the standard was maximum feasible diligence, and says, oh, we're going to apply this case there, apply this case there, the court doesn't need to review any part of the application of law to Fed to know that the board has used the wrong standard. Suppose the issue is whether there were exceptional circumstances that might justify equitable tolling, and let's say the alien in question was in a coma. What would happen there? No judicial review? And they say, well, that's not an exceptional circumstance. Well, I think to the extent the question is, as a categorical matter, is being in a coma an exceptional circumstance, that could be a question of law. I mean, take this Court's decision in Holland v. Florida. I think the question there was the question of whether the application of law to Fed is or isn't reasonable diligence as a matter of law. I don't think so. I mean, I think in the other case, why are comas special? Well, they very well might not be, but I think it would be a declaration of a legal principle to say they weren't special. Just like in Holland v. Florida, when this Court said, you know, the Eleventh Circuit had applied an overly rigid rule regarding attorney misconduct, I understand that to be a legal principle. Sotomayor So how is that different from the case here, where at least one of the plaintiffs says, binding circuit precedent made it unreasonable for me to file a motion to reopen, and the Fifth Circuit said, no, you could have filed it earlier. That seems to me to be a pure legal question under your definition. And we don't understand the Fifth Circuit to have even reached that issue. That issue throughout this case has been teed up as an issue under the extraordinary circumstances of fraud. Breyer. Then look, what I think everyone's trying to ask you is Hurricane Katrina blows the courthouse away, okay? The standard is you have to file within 15 days, but there is no courthouse. It's blown to Florida. And so question, was that, the standard says, an unusual circumstance? Writing, the Court says, if it's an unusual circumstance, well, then it's extended. All right? We agree Katrina blew the courthouse away, but that isn't an unusual circumstance. No review? Isn't that what we're trying to find out? No review, but my goodness, if we look at the cases, I mean, then you've taken from the attorneys for the person who's trying to get review any kind of check through appeal on the action of a district judge. Now, that's a, I think it's pretty hard to find statutes that do that in a country that has a presumption of judicial review. I think it's pretty difficult to read St. Cyr as saying that. When Congress made statutory what it thought was the standard of St. Cyr, and included review of mixed questions of fact and law. So I mean, if that's actually your position, it's unbounded, and I don't get that. I think to determine what is reviewable and what is not under our position, you look at the type of analysis that's required to evaluate that claim. So there are going to be certain claims that entail only a purely legal analysis. You look at the statute, you interpret it. There's no need to have recourse to the particular. How is the Katrina hypo different from the coma hypothetical? You said one's reviewable and one's not reviewable, I think, if I heard you correctly. Well, I think it's because to answer the Katrina hypo, we would need to know more about the trying to overcome. What would you like to know? I'll tell you. The courthouse is in Florida. And the litigant, by the way, has never been able to walk more than one mile, and his car has been blown up. Right. But this is exactly my point. I think those facts are extremely helpful to answering the question. And it's because I need those facts to answer the question. You do? I thought that your answer was that at some point, the factual mistake becomes so egregious that it reflects a misunderstanding of what exceptional means, rather than a misapplication of fact, which, correct me if I'm wrong, because that does lead into Justice Gorsuch's concern that, you know, you've kind of given up the game because then it's just a question of how exceptional is the fact. Right. Which begins to look, and once you say that, it begins to look like your standard application of law. Right. And, Mr. Chief Justice, I wouldn't draw the line in terms of how egregious the error is. I think that does invite the sort of review of the application of law to fact in order to determine whether there's been an error of law. I think that's sort of a reverse engineering end run around the statute. What I really mean to say is, if the question can be answered through purely legal analysis, then it is a pure question of law. Well, Ari, here is a difficulty. That, I think, is really a difficult question. I didn't think the other that I asked was so difficult. But this one, I think, is. I mean, I learned years ago that you can absolutely distinguish the factual part of a mixed question from the legal part. And I also learned that no class is able to grasp my clear understanding of that. I also learned that there are many lawyers and probably even more judges that find that difficult. And there are many cases that are mixed up in that respect. Is it a coerced confession? Was there, in fact, you know, there are loads of them. Okay. Now, the difficulty is that sometimes it's important and sometimes it isn't. And sometimes it's easy to separate out and sometimes it isn't. And so, rather than produce just a confusion in the lower courts and in the bar by saying, the legal part is but the factual part isn't, why not read this as saying, when they say questions of law, they mean to include mixed questions of fact and law and leave it at that, just as St. Cyr did, just as those statutes you quoted did. And that's the end of it. Everyone can understand it. And, of course, if the district judge has discretion, well, then, the right question of law will be, did he abuse his discretion? Justice Breyer, we just don't think that's consistent with the text, the history of this case. The text says questions of law. And I can find statutes that use those words, and they clearly mean both. As they say. I think that the best reference point for what questions of law means is 1254-2, which this Court itself has applied in a pretty principled way to distinguish pure questions of law from mixed questions. I mean, identifying pure questions of law is something appellate courts are quite used to doing. The phrase questions of law is like the term jurisdiction. It's used — it means lots of different things. It's used sometimes rather sloppily, and it's asked for different purposes. So I don't get anything out of the arguments on either side about what is meant by questions of law in general. The question is what Congress meant here. Anyway, that's just a — I think it's fair to look at the context in which Congress looked — wrote this statute. As I said at the outset, I think the context here points in a very clear direction. I mean, this was a Congress whose primary policy preference was to give criminal aliens no judicial review at all. Yeah. And I think you have to bite the bullet on the issue of the hypotheticals about the comatose alien or the alien who can't file because the courthouse has been blown away by a hurricane. If you posit a lower-level decision-maker who's either a monster or an idiot, then of course you're always going to think that there's a case for judicial review. Whenever judicial review is cut off, you open up the possibility that there's going to be a decision that would otherwise be reviewed that seems really, really wrong. So you have to — you have to make the argument that this is what Congress wanted. And why would they have wanted that in this situation? And I think they would have wanted that because their goal all along since 1996 is to expedite the removal of criminal aliens. I think it's exactly — But would they expedite it, though, by moving it to the court of appeals and taking the district court out? So that — I think — I think that's half the equation. I think part of the expedite — I mean, that's a year or more, you know, in many cases, that's cut out by doing that. So that's significant saving of time. But I think — I think that's only half the equation. The other half is in the types of decisions that the courts of appeals would have to engage in. And under my friend's — On that — on the context point that you were just referencing, too, what about 1252b9? That seems important. That's amended in the Real ID Act. And that refers to a universe where you just have questions of law and questions of fact in this statute. And if you look at that, it doesn't refer to mixed questions separately. The only thing excluded, arguably, the argument goes, is questions of fact. Everything else is a question of law and thus reviewable when you combine your — this statute with b9. I think b9, which refers to all questions of law and fact, is just a natural way of referring to all three categories. I mean, we are talking about questions of law, mixed questions of law and fact, and questions of fact. And so to refer to all three at once, I think it's quite natural to say all questions of law and fact. I think that's — No, I'm sorry. I was just going to say, I think that's all the zipper clause is doing. And I think the language there fits naturally with our argument. Mr. Liu, there is no question that we have a presumption in favor of judicial review, correct? Yes. Now, you said that's a way of divining congressional intent. I don't actually think that, because I think it's much broader than that. It has to be a presumption that we will avoid what St. Cyr pointed to as a constitutional problem or a statutory problem, because St. Cyr was saying very clearly the issuance of the writ was not limited to challenges to the jurisdiction of the custodian, but encompassed based on errors of law, including the erroneous application or interpretation of the statute. And so if we take that statement with the presumption, we know that Congress wasn't intending to remove judicial review altogether. It put this in the Court of Appeals, as Justice Kavanaugh pointed. I'm not sure where I get the presumption that it was going to cut St. Cyr's concern in half by not including the application of law to settled facts. We don't read that line in St. Cyr to be referring to the application of law to fact. Rather, we read that line to be about the scope of a statute's coverage. In other words, its application. It begs the question, doesn't it? Well, I don't think so. I mean, if you use the Court's opinion in St. Cyr as its own dictionary, you'll see on page 293 the Court itself uses application to describe the pure question of law in that case. And then in Part III, where the Court actually addresses that question, it uses the word apply or applied or application no fewer than 18 times to describe the retroactive  Mr. Liu, I think Justice Kagan had a question on the table. Have you finished? Yeah, sure. Here's one way to look at this case. The text gets neither side all the way home. Can't possibly. The analogy is this is similar to Justice Alito. They're really different contexts on both sides. The legislative history is basically you can't, you don't have a clue what it means. St. Cyr can be read multiple ways. So all of those, I mean, you have arguments and Mr. Liu has arguments, but none of them really seem to carry the day. And that suggests to me that the presumption of reviewability should carry the day. Why isn't this the classic case in which it's like it's just not clear? And so the presumption does the work, and you would lose. Well, to answer your question directly, we do think it's a presumption of congressional intent. We think that's reflected in the block nutrition case. But I guess maybe I'm just going to fight the premise. I mean, we don't think Congress's intent is at all ambiguous here that we get to a point where you need to put a thumb on the scales in favor of judicial review. Well, I take that point. I mean, that's why I asked about what's the nature of this presumption, because if this pretty strong sense that Congress wanted to do something significant here about cutting off review for criminal aliens. But if this presumption is about more than that, if it's a presumption that sort of stands in for important separation of powers principles, then that response isn't quite good enough. Well, I think at the end of the day, the presumption, if we know anything about it, it's not a sort of magic words requirement. And I think this is a case where we know exactly what Congress was responding to. We know the goal it ultimately wanted to achieve, and we know it wanted to achieve that goal as far as possible. And I think there are good structural reasons to think my friend's reading is wrong. The one is what I said at the outset, that under my friend's reading, there really would be no meaningful difference between review in cases involving criminal aliens and review involving non-criminal aliens. And if you think about it, I suppose that you take that presumption, very interesting and deep question, that I have, and maybe you have a view on this. I have always thought that it is really basic. It is the presumption that assures every person in the United States of America that this government will not harm that person in ways that are unlawful, unfair, arbitrary, capricious, unconstitutional, or an abuse of discretion, and that if you want to have a country that has a government that is under control, there is no better way. I'm not saying judges are perfect, but that separation of powers is designed to provide a check. You see how basic I say it is? And what do you think? I don't think the separation of powers is a concern for us. I mean, what Congress has done in this provision is preserve judicial review over the most important questions. Well, I don't think that quite gets to Justice Breyer's question, in fairness. Forget about this statute. Isn't the presumption pretty ancient, really? I mean, it goes back to the common law, that the king can't act arbitrarily without some check, some review, some opportunity to be heard by citizens. Isn't that where the presumption really comes from? And isn't that pretty fundamental to the separation of powers? And due process and those considerations? I don't dispute any of that. What I would say is St. Cyr cashed out all those concerns in its constitutional ruling. Okay. But you'd agree, though, that the presumption itself has those roots? That's fair enough, Justice Gorsuch, absolutely. But I would think that when Congress makes its intent clear that it wants to foreclose judicial review in those circumstances and go up to the limits that this Court identified, the constitutional doubts that this Court identified in St. Cyr, that Congress is able to do so. But Congress knew about this. We know that from the ACLU objection and the back-and-forth into the deletion of the purer. And Congress could have easily written a statute that said review of questions of law, no review of facts or application of law to fact. And it had used that kind of phrasing in other statutes. That would have been the clear language that I think you're looking for. Well, I mean, I think that language would have been equally clear. But I think Congress thought all it was doing was tracking this Court's concerns in St. Cyr, which were focused on the availability of judicial review for constitutional claims and pure questions of law. Now, I think the problem with my friend's position is it would reduce this difference. And his only safety valve is to say, well, some of these mixed application decisions would be discretionary and therefore not reviewable. Well, that's just not how the statute works. I mean, I think he's relying on 1252a2b, which does say that discretionary denials are unreviewable. But the questions of law preservation, the saving clause here applies equally to 1252a2b. And so I don't think that's a solution to the problem. You see this play out in the Ninth Circuit, where they've read questions of law to include every mixed question of law and fact. And what that's done is that it's gutted the application of the discretionary denial bar, because virtually everything that you can call an exercise of discretion, you can also describe as involving the application of law to fact. And if questions of law are an exception to that bar, then you're not really left with much that's protected from review. So I don't think that's a solution to trying to make this meaningful. I did want to mention, too, the administrability issue with Petitioner's position. They would have this Court tell, have courts of appeals start trying to distinguish questions of historical fact from mixed questions of law. You know, of course, this Court has experience with that. I mean, pre-AEDPA, this was the regime, because factual questions got a lot of deference and mixed questions and legal questions didn't. And there was a whole line of cases that this Court decided trying to put questions on one side of the line or the other. The line we're proposing, which is indeed a pure questions line, I think my friend acknowledges is a clear line to administer. And it's one that appellate courts are well-suited to administer and they've been doing in many other contexts. I think Justice Gorsuch mentioned the lay of the land in the courts of appeals. It's absolutely the case that all 10 courts of appeals that have addressed the standard of review that applies to the very issue here, that is reasonable diligence for purposes of equitable tolling, for purposes of seeking to reopen, removal proceedings, that determination is reviewed for abuse of discretion when this bar doesn't apply. And so Petitioner's reading would create a mismatch in one of two ways. Either we would be labeling as a question of law something that would otherwise be reviewed for abuse of discretion, or we would be reviewing de novo something that would otherwise be reviewed under a highly deferential standard. I don't think that that's really a tenable position. I think what those cases teach us is that the issue here is, at the very least, a primarily factual mixed question. Mr. Liu, on that, the way I work my way through it, and I want to give you a shot at it, is to say that when we have the abuse of discretion standard of review, we often mean really two things. One can abuse the discretion by a clear error of fact finding. And one can abuse one's discretion by misapplying the law. And both of those can be abuses of discretion. I see it breaking down into those two camps. And when I'm applying the abuse of discretion, when I used to apply the abuse of discretion standard of review, and the facts were agreed upon, it then became, in my mind, a legal question, much as it would at summary judgment or 12B6, whether these facts, as given, rise to the level that the law requires. Now, I know you don't agree with that. So have your shot at it. Well, I think that inquiry is still, requires a great deal of exercise of judgment on behalf of whoever is conducting the inquiry. You are taking in all the historical facts. You're looking at them as a whole. You're balancing one against the other. There are judgments made throughout the process. So, you know, you might label it one thing or the other. But I think when you get down to what the actual nature of the inquiry is, it is one that's bound up with the facts of the case. And I think the teaching of this Court's opinion in Lakeridge is that there is a part of a mixed question where you can't unwind the factual and the legal parts. That is, there is a part where they are so intertwined that the best you can say is, well, this is either primarily factual or primarily legal. It's those mixed questions that I don't think Congress was trying to give judicial review of, because if that were the case, there really wouldn't be any difference between the review that the criminal aliens got and the review that the non-criminals  got. You've mentioned St. Cyr, and Congress was just responding to that. But isn't it true that the Courts of Appeals in the wake of that decision reviewed mixed questions before, so after St. Cyr, before the real idea? Well, only four Courts of Appeals did. I don't think that's a broad enough consensus for this Court to apply any sort of But Congress indicated it was, at least a committee indicated, awareness of those decisions. I don't think that's right. If you look at the passage of the conference report on which Petitioners rely, put aside that, go back to the Courts of Appeals decisions. They had reviewed mixed questions in that interim. Four of them had. That's far from the sort of consensus I think Congress was focused on. There's no indication Congress was aware of those decisions, and all those decisions rested on a reading of one line of St. Cyr, which, as I said, is mistaken. I mean, even if you look at the decision cited in that line, it's footnote 18, you'll see that each of the sources cited involves a pure question of law, that is, a question of statutory construction. So I don't think the word application can bear all that weight. Thank you, counsel. Five minutes, Mr. Hughes. Thank you, Your Honor. I'll be brief. Our first point is that because Congress created judicial review, that review must, in fact, be substantive. It is not just review over whether or not the Board wrote down the right boilerplate. We think that's an important starting point, and when Congress created Section 2D, it must have meant for more than just whether or not the Board used the right statement of the standard. It must include whether or not that standard's used. The second point is jurisdictional rules, particularly rules like this that are often implied, applied, have to be clear. There needs to be clear direction to the Courts of Appeals as to, at the outset of a case, when they have jurisdiction and when they don't have jurisdiction. The rule we've offered provides the Court a clear test. The government, by contrast, if we set aside its extreme position, the position that would be you look at the boilerplate only, there is no test the government has offered as to meaningfully distinguish between whether or not a standard was actually used and whether or not the standard was correctly applied. Because the courts need clarity, we think the rule that we offer is by far the most appropriate rule that will allow courts to adjudicate these cases as they arise. Third and finally, if there is any doubt here, I think the presumption of judicial review is quite important. This does bear not just an underlying congressional intent, but core separation of powers principles. The view of if there is going to be any delegation of lawmaking authority to the agencies, that certainly needs to be clearly stated by Congress. So any doubt as to how the various statutory interpretation factors in the history of the statute in St. Cyr all apply, to the extent that that is a wash, we don't think it is, we think it strongly favors our position, but that would strongly favor applying the presumption and ultimately concluding that there is judicial review over the application of law to fact. So ultimately our rule is necessary to fulfill the promise of judicial review and the premise of judicial review that's undeniably created in the statutory text. It's also required to be a fulsome response to St. Cyr as the cases in the wake of St. Cyr, as well as the pre-1789 cases that we identify in our briefs make clear. There would be substantial suspension clause problems if the Congress had not in the Real ID Act included the application of law to fact. But then finally and ultimately, our rule is the one that is clear, that is manageable, that gives a workable test for the lower courts that will be applying this hundreds of times each year to know where jurisdiction starts and stops. And it's the one that's ultimately true to the presumption in favor of judicial review in the event of any ambiguity. Thank you, Your Honor. Roberts. Thank you, counsel. The case is submitted.